**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| **ANGELA FRIEDLEIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No.:** |
| | ) | |
| **SUPPLYONE TAMPA BAY INC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, ANGELA FRIEDLEIN ("Plaintiff" or "Friedlein") files their Complaint against the Defendant, SUPPLYONE TAMPA BAY INC ("Defendant" or "SupplyOne"), and states the following:

## NATURE OF THE CLAIMS

1. This is an action for monetary damages, injunctive relief, and other equitable relief brought pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*. (hereinafter "ADA"), and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"), as applicable. Plaintiff alleges that Defendant engaged in unlawful employment practices based on disability, in violation of the aforementioned laws. These actions include, but are not limited to, discrimination, retaliation, failure to accommodate, and wrongful termination.

## JURISDICTION

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331

and 1343(a)(4) as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA and FMLA.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events, or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this district.

**THE PARTIES**

4. Plaintiff, Friedlein, is a citizen of the United States was at all times material a resident of this district.

5. Defendant, SupplyOne, is a For-Profit Corporation that operates in this district.

6. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

**PROCEDURAL REQUIREMENTS**

7. Plaintiff has complied with all statutory prerequisites to filing this action.

8. On August 10, 2026, Plaintiff filed a timely claim with the Equal Employment Opportunity Commission ("EEOC"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), based on disability discrimination and retaliation.

9. Plaintiff's EEOC charge was filed within one hundred eighty (180) days after the alleged unlawful employment practices occurred.

10. On August 23, 2026, the EEOC issued a Determination of Charge and Notice of Right to Sue.

11. This complaint was filed within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

12. Plaintiff, Angela Friedlein, was employed by Defendant, SupplyOne Tampa Bay Inc. ("SupplyOne").

13. Beginning August 25, 2025, Plaintiff was assigned by Taylor-White Staffing, a staffing agency, to a full-time position at SupplyOne's facility in Tampa Bay, Florida.

14. From August 25, 2025 through September 23, 2025, SupplyOne, not Taylor-White Staffing, assigned Plaintiff's work tasks, set her work schedule, and directly supervised her day-to-day job performance through SupplyOne's own personnel.

15. During this same period, Taylor-White Staffing's role was limited to administering Plaintiff's payroll. Taylor-White Staffing did not assign Plaintiff's work, set her schedule, or supervise her job performance.

16. Plaintiff worked exclusively at SupplyOne's facility throughout this period.

17. Plaintiff worked full-time, approximately forty (40) hours per week, continuously from the beginning of her assignment to SupplyOne on August 25, 2025 through her termination in June 2026.

18. On September 23, 2025, without any interruption in her employment, her work location, or her job duties, Plaintiff transitioned from an employee of Taylor-White Staffing to a direct, full-time employee of SupplyOne.

19. Because SupplyOne controlled the work and working conditions of Plaintiff's employment beginning August 25, 2025, SupplyOne and Taylor-White Staffing were joint employers of Plaintiff within the meaning of 29 C.F.R. § 825.106(a) from August 25, 2025 through September 23, 2025.

20. As a joint employer, SupplyOne is required to count Plaintiff's employment beginning August 25, 2025, regardless of which entity paid her, in determining her eligibility for leave under the FMLA. 29 C.F.R. § 825.106(d).

21. Counting Plaintiff's employment with SupplyOne, whether jointly with Taylor-White Staffing or directly, Plaintiff was on pace to complete twelve months of employment, and to become an eligible employee under the FMLA, on or about August 25, 2026.

22. Defendant terminated Plaintiff's employment in June 2026, approximately two months before Plaintiff's anticipated FMLA eligibility date of August 25, 2026.

23. Plaintiff has a longstanding disability, Pancreatitis, a physical impairment that substantially limits her digestive function, a major bodily function under the ADA.

24. In early 2026, Plaintiff began experiencing severe flare-ups related to her disability.

25. Between January 2026 and the end of March 2026, Plaintiff required hospitalization on three separate occasions because of her Pancreatitis.

26. Due to the severity of her medical condition and resulting hospitalizations, Plaintiff exhausted all ten days of her available Paid Time Off ("PTO").

27. In or about mid-March 2026, Plaintiff's direct supervisor, Deanna Bellows, Controller, approached Plaintiff concerning her use of PTO and questioned the reason for her absences.

28. In response, Plaintiff informed Ms. Bellows that she was experiencing serious health issues and had no alternative but to use her available PTO.

29. Around the same time, following one of her hospitalizations, Plaintiff

specifically informed Ms. Bellows by text message that she suffered from Pancreatitis.

30. Defendant therefore had actual knowledge of Plaintiff's disability and the disability-related nature of her absences.

31. On May 11, 2026, after Defendant became aware of Plaintiff's disability and prior hospitalizations, Plaintiff received a highly positive year-end performance evaluation.

32. Plaintiff's performance evaluation covered the period from April 2025 through April 2026.

33. In connection with her positive performance evaluation, Defendant awarded Plaintiff a raise.

34. On or about May 22, 2026, Plaintiff began experiencing another severe Pancreatitis flare-up while at work.

35. Approximately halfway through the workday, Plaintiff informed Ms. Bellows that she was experiencing a Pancreatitis flare-up and requested permission to leave work.

36. Ms. Bellows expressed sympathy, instructed Plaintiff to "feel better," and approved Plaintiff's request to leave work.

37. Plaintiff's disability-related symptoms continued through the following Wednesday and prevented her from reporting to work.

38. Before each disability-related absence, Plaintiff notified Ms. Bellows in advance that her medical condition prevented her from reporting to work.

39. In requesting permission to leave work and additional time away from work because of her disability, Plaintiff was requesting a reasonable accommodation in the form of leave beyond her available Paid Time Off.

40. Plaintiff's condition became sufficiently severe that she again required hospitalization.

41. Plaintiff informed Ms. Bellows of her hospitalization.

42. Plaintiff further informed Ms. Bellows that she expected to remain hospitalized for only a few days and intended to return to work on June 1, 2026.

43. Plaintiff also informed Defendant that she intended to request leave under the Family and Medical Leave Act ("FMLA") as soon as she became eligible to do so.

44. As anticipated, Plaintiff returned to work on June 1, 2026.

45. Throughout this period, Plaintiff kept Defendant informed regarding her medical condition, hospitalization, anticipated return to work, and intention to take FMLA leave once eligible.

46. Despite Plaintiff's consistent communications concerning her disability-related absences and her highly positive performance evaluation and raise approximately one month earlier, Defendant terminated Plaintiff's employment shortly after her return to work.

47. Plaintiff alleges that Defendant terminated her employment before she reached her FMLA eligibility date in order to avoid having to provide her with FMLA-protected leave once she became eligible.

48. Defendant cited Plaintiff's "attendance" as the reason for terminating her employment.

49. Plaintiff alleges that the only absences Defendant identified in support of its termination decision were absences necessitated by her Pancreatitis flare-ups.

50. Defendant's termination letter further stated that Plaintiff's "absences made it

difficult for [her] team."

51. Plaintiff alleges that Defendant's termination letter expressly connected its decision to terminate her employment to absences caused by her disability.

52. Plaintiff further alleges that Defendant's stated attendance justification was pretextual because Defendant had recently provided her with a highly positive performance evaluation and performance-based raise.

53. Upon information and belief, Defendant did not terminate similarly situated non-disabled employees who had comparable or greater unplanned absences from work.

54. Plaintiff alleges that Defendant terminated her shortly after she returned from a disability-related hospitalization and after she informed Defendant of her intention to exercise medical-leave rights.

55. Plaintiff further alleges that Defendant relied upon her disability-related absences as a negative factor in making its termination decision.

56. Plaintiff alleges that the temporal proximity between her disability disclosure, hospitalizations, disability-related absences, notice of her intention to take medical leave, return to work, and subsequent termination demonstrates discriminatory and retaliatory motives.

57. Plaintiff alleges that Defendant discriminated against her because of her disability and retaliated against her for engaging in protected activity associated with her disability-related medical needs and leave.

58. Defendant's alleged conduct constitutes disability discrimination and retaliation in violation of Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C.

§§ 12101 et seq. ("ADA").

**Count I: Disability Discrimination under the ADA**

59. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-58, above.

60. At all times material, Defendant employed fifteen (15) or more employees and qualified as an employer within the meaning of the ADA.

61. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

62. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

63. Plaintiff was able to perform the essential functions of their job at the time of their termination.

64. Defendant is prohibited under the ADA from discriminating against Plaintiff because of their disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

65. Defendant intentionally discriminated against Plaintiff and subjected Plaintiff to disparate and discriminatory treatment throughout their employment based on their disability, thereby resulting in Plaintiff's unlawful termination.

66. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

67. Defendant's unlawful conduct in violation of the ADA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

**Count II: Failure to Accommodate in Violation of the ADA**

68. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-58, above.

69. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA because Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

70. Plaintiff was able to perform the essential functions of their job at the time of their termination.

71. Defendant is prohibited under the ADA from discriminating against Plaintiff because of their disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

72. Defendant is required under the ADA to engage in the interactive process and provide reasonable accommodations for Claimant's disability.

73. Defendant failed to reasonably accommodate Plaintiff's requests for leave, as alleged above, or to engage in the interactive process regarding those requests.

74. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

75. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling them to compensatory damages.

76. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling them to punitive damages.

**Count III: Retaliation in Violation of the ADA**

77. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-58, above.

78. At all times material, Defendant employed fifteen (15) or more employees and qualified as an employer within the meaning of the ADA.

79. At all times relevant to this action, Plaintiff was a qualified employee within a disability under the ADA.

80. Defendant intentionally retaliated against Plaintiff based on their request for reasonable accommodations and use of protected medical leave pursuant to their disability.

81. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

82. Defendant's unlawful conduct in violation of the ADA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of

Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

**Count IV: Retaliation in Violation of the FMLA**

83. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-58, above.

84. Although Plaintiff had not yet completed twelve months of employment at the time of her termination, she had informed Defendant of her intention to request FMLA-protected leave once she became eligible to do so, and she was on pace to become an eligible employee under the FMLA on or about August 25, 2026. A pre-eligibility request for post-eligibility FMLA leave constitutes protected activity under the FMLA. See Pereda v. Brookdale Senior Living Communities, Inc., 666 F.3d 1269 (11th Cir. 2012).

85. Defendant is and was an employer as defined by the FMLA.

86. Plaintiff engaged in statutorily protected activity under the FMLA by informing Defendant of her intention to request FMLA-protected leave once she became eligible to do so.

87. Defendant retaliated against Plaintiff by terminating her employment because of this protected activity.

88. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

89. Plaintiff was injured due to Defendant's willful violations of the FMLA and they are entitled to legal relief.

**Count V: Interference in Violation of the FMLA**

90. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in

Paragraphs 1-58, above.

91. Although Plaintiff had not yet completed twelve months of employment at the time of her termination, she had informed Defendant of her intention to request FMLA-protected leave once she became eligible to do so, and she was on pace to become an eligible employee under the FMLA on or about August 25, 2026. The FMLA protects a pre-eligibility request for post-eligibility leave from interference. See Pereda v. Brookdale Senior Living Communities, Inc., 666 F.3d 1269 (11th Cir. 2012).

92. Defendant is and was an employer as defined by the FMLA.

93. Defendant interfered with Plaintiff's prospective right to FMLA-protected leave by terminating her employment before she could reach her FMLA eligibility date and take the leave she intended to request.

94. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

95. Plaintiff was injured due to Defendant's willful violations of the FMLA and they are entitled to legal relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b) Grant Plaintiff their costs and an award of reasonable attorneys' fees (including

expert fees); and

c) Award any other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

**/s/ Gary Martoccio**
Gary Martoccio, Esq.
Florida Bar No. 099040
**Martoccio Law Group**
2101 W. Platt St. Suite 200
Tampa, Florida 33606
T: (813) 725-3279
gary@martocciofirm.com
*Lead Counsel for Plaintiff*